**UNITED STATES of America,**

v.

**John FOSTER, Jr., Appellant.**

**No. 91–3246.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 1993.

Decided April 5, 1994.

James T. Maloney, Washington, DC (appointed by the Court), argued the cause and filed the brief, for appellant.

Lori A. Green, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC.

Before WALD, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

John Foster was convicted in District Court of maintaining a premises in aid of trafficking a controlled substance in violation of 21 U.S.C. § 856(a) (1988) and possession of an unregistered sawed-off rifle in violation of 26 U.S.C. § 5861(i) (1988). The District Court sentenced him to forty-one months employing the sentencing guidelines grouping provisions to arrive at that total. On appeal he does not challenge the trafficking conviction, but contends that his sentence was improperly computed and that there was not sufficient evidence to support the § 5861 conviction, as a reasonable jury could not have concluded that he knew the sawed-off rifle was operable. Finding no error in either the conviction or the sentencing, we affirm.

I

■ According to the evidence entered at trial, Metropolitan Police officers executed a search of appellant John Foster's home on February 7, 1991. In addition to currency, drug packaging materials, and crack cocaine, police retrieved from the premises a .38 caliber handgun and a sawed-off .22 caliber rifle without a serial number. The trial court denied Foster's motion for a judgment of acquittal at the close of the government's case, and the jury convicted Foster of maintaining a premises in aid of trafficking a controlled substance in violation of 21 U.S.C. § 856(a) (1988) and of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(i) (1988).

Section 5861(i) provides that it is unlawful for any person "to receive or possess a firearm which is not identified by a serial number as required by this chapter." A firearm is defined in 26 U.S.C. § 5845(a) (1988) as:

(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length;
. . . .

According to the evidence against Foster, he possessed a .22 caliber rifle with a barrel length of less than 16 inches, specifically 13 inches. The rifle was cut off at both ends. While the rifle had been originally manufactured for semi-automatic fire, the alteration of its length rendered it unfit for semi-automatic use. However, ATF agents and Metropolitan Police testified that the rifle still functioned as a single-shot weapon, and that the rifle had been successfully test-fired the day after Mr. Foster's home was searched.

Foster argues that the only reasonable inference a jury could draw from the evidence of the rifle's modification is that he believed the rifle had been disabled to make it unfit for use as a weapon. In advancing this argument, he relies exclusively on *United States v. Harris*, 959 F.2d 246, 259 (D.C.Cir.1992). In *Harris*, two defendants were convicted for possession of a machine gun in violation of § 5861(d), although the government failed to introduce evidence establishing that the defendants knew the firearm in question was a machine gun. *See Harris*, 959 F.2d at 261. We reversed, "reject[ing] the notion ... that appellants' mental state (*mens rea*) was irrelevant" to determining culpability under § 5861, and held that the government is required to demonstrate that defendant knew the weapon he possessed was a firearm within the meaning of the statute. *Id.* We left for another day the question of "what evidence would be sufficient to establish that a defendant did have knowledge that he possessed a 'firearm'" within the meaning of the statute. *Id.*

We note that the *Harris* defendants were accused of possessing a "firearm" in the nature of a machine gun, that is a fully automatic weapon. As we noted in *Harris*, § 5861 renders unlawful the possession without proper registration (or serial numbers) "of only certain kinds of firearms that [Con-

gress] thought were highly dangerous," not just guns of any sort. *Id.* at 260. The feature of the weapon in *Harris* that brought it within the Act was its fully automatic nature—a feature not necessarily apparent to an uninitiated possessor. The feature of Foster's rifle which brought it within the proscription of the Act was its length—a fact readily observed or ascertained.. The *mens rea* required under *Harris* related to the knowledge of the feature of the weapon that made it an unlawful firearm, as opposed to one outside the definition set forth in § 5845(a). *Harris* did not establish, indeed did not discuss, the creation or allocation of any burden of proof as to a defendant's subjective knowledge of the operability of the firearm. Indeed, under the expanded definition of "firearm," "machine gun," "rifle," "shotgun," and "any other weapon," the proscription of the statute includes weapons "which may be readily restored" to fire in accordance with their original method of operation. *See* 26 U.S.C. § 5845(b)–(e) (1988).

In *Harris,* we suggested that the visibility of certain characteristics may be sufficient to establish knowledge of the proscribed nature of a firearm. *See Harris,* 959 F.2d at 261 (citing *United States v. Herbert,* 698 F.2d 981, 986 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983)). The readily apparent barrel length and general appearance of the sawed-off rifle in this case are sufficient under *Harris* to establish that its owner knew the weapon needed to be registered or have a serial number. Because the statute outlaws possession of a firearm without regard to whether or not the possessor has ever used it, it is likely that in a high percentage of cases there will be no evidence as to defendant's knowledge of the operable or inoperable condition of the contraband weapon. That being the case, and the unlawful feature of the weapon being a readily visible one, we hold that the jury had all it needed to draw all necessary inferences to find the defendant guilty beyond a reasonable doubt.

We reach this conclusion applying the same standard of review as the trial judge applied in passing on the motion for judgment of acquittal. We view the evidence submitted at trial in "the light most favorable to the government, according the government the benefit of all legitimate inferences, and recognizing that it is the jury's province to determine credibility and to weigh the evidence...." *United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir.1983). In this case, the evidence supported a conclusion that the defendant possessed a .22 caliber rifle well below the length governed by the statute. Nothing else appearing, the jury could infer that he knew he possessed a sawed-off rifle with a short barrel. Once the government had shown this and the fact that the firearm had no serial number, the evidence was sufficient to survive the motion for a judgment of acquittal. Because *Harris* imposes no additional requirement that the defendant subjectively believe the gun in his possession was operable, we sustain Foster's conviction for possession of an unregistered firearm in violation of § 5861(i).

## II

The District Court sentenced appellant to forty-one months based on a total offense level of twenty under the U.S. Sentencing Guidelines. This sentence was calculated from a base offense level of sixteen for the 21 U.S.C. § 856(a) violation, *see* U.S.S.G. § 2D1.8(a), plus a two-level enhancement for possession of the .38 during commission of that offense, *see id.* § 2D1.8(b)(1), plus a two-level enhancement under the guidelines' "grouping provisions." *See id.* § 3D1.4 (1993) (providing that combined offense level for a group of closely related counts is to be determined "by taking the offense level applicable to the Group with the highest offense level and increasing that offense level" by two in the case of two units within four offense levels of one another).

Foster was originally indicted for using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). After the close of the government's case, the trial court granted Foster's motion for judgment of acquittal on the § 924 count. Foster argues that the District Court improperly enhanced his crackhouse conviction by basing the enhancement on conduct for which he had been

acquitted. In his brief, Foster candidly admits, as we noted in *Harris,* 959 F.2d at 265, that ten other circuits have determined that such enhancements are proper.[1] *See United States v. Averi,* 922 F.2d 765, 765–66 (11th Cir.1991); *United States v. Coleman,* 947 F.2d 1424, 1428–29 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992); *United States v. Duncan,* 918 F.2d 647, 652 (6th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991); *United States v. Fonner,* 920 F.2d 1330, 1332–33 (7th Cir.1990); *United States v. Dawn,* 897 F.2d 1444, 1449–50 (8th Cir.), *cert. denied,* 498 U.S. 960, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–81 (2d Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Isom,* 886 F.2d 736, 738–39 (4th Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747, 748–49 (5th Cir.1989); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Ryan,* 866 F.2d 604, 608–09 (3d Cir.1989).

As those circuits have generally observed, the sentencing guidelines were not intended to displace the pre-guidelines practice of considering the full range of defendant's conduct on sentencing, including conduct for which the defendant was acquitted. *See, e.g., Fonner,* 920 F.2d at 1332; *Mocciola,* 891 F.2d at 16. Quite rightly, they also recognize that a finding of possession for the purposes of a sentence enhancement requires proof only by a preponderance of the evidence, and that an acquittal by a jury under the more stringent reasonable doubt standard does not logically preclude a finding of possession on the lesser standard of proof. *See, e.g., Duncan,* 918 F.2d at 651; *Fonner,* 920 F.2d at 1332; *Dawn,* 897 F.2d at 1449; *Rodriguez–Gonzalez,* 899 F.2d at 181; *Mocciola,* 891 F.2d at 16; *see also Isom,* 886 F.2d at 738 & n. 3 ("A verdict of acquittal demonstrates only a lack of proof beyond a reasonable doubt; it does not necessarily establish the defendant's innocence.... For facts at sentencing, the burden of proof by a preponderance obvious-

ly differs in a significant way from proof beyond a reasonable doubt.").

Our jurisprudence on related questions is consistent with the holdings of these other circuits. In the pre-guideline sentencing context, we have sustained a sentencing court's re-evaluation of facts underlying an acquitted charge where "there [was] a persuasive basis for the conclusions reached by the ... court." *United States v. Campbell,* 684 F.2d 141, 154 (D.C.Cir.1982). Furthermore, although we have not expressly faced the present question as to whether acquitted conduct can be used in computing enhancements, in *United States v. Boney,* 977 F.2d 624, 635–36 (D.C.Cir.1992), we approved the consideration of acquitted conduct in the closely related context of determining the proper base offense level under the sentencing guidelines. The District Court's understanding of the use of acquitted conduct in the enhancement context was consistent with our prior jurisprudence in related areas and with the well-reasoned opinions of our fellow circuits. Because appellant has pointed us to "[n]othing in either the guidelines or the Constitution [that] prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct," *Fonner,* 920 F.2d at 1332, appellant's sentence enhancement must be affirmed if the government demonstrated by a preponderance that Foster possessed the .38 during his drug trafficking offense.

■ The standard of review for factual questions in the sentencing context is dictated by 18 U.S.C. § 3742(e) (1988), which provides that on review of sentences "the court of appeals shall ... accept the findings of fact · of the district court unless they are clearly erroneous." We accord the sentencing court's inferences from the facts the same deferential standard of review as the findings themselves. A judge who has heard all the evidence and can assess witness credibility "may perhaps draw inferences that we would have difficulty discerning from the pa-

---

1. The Ninth Circuit has some authority to the contrary, *see United States v. Brady,* 928 F.2d 844, 851 (9th Cir.1991).

per record." *United States v. Lam Kwong–Wah,* 966 F.2d 682, 688–89 (D.C.Cir.) (internal quotation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992).

The police located the .38 on the porch off the bedroom in which Foster was arrested. The gun was laying in plain view atop clothing in a box, located near a trunk containing many of Foster's personal belongings. The gun was also in close proximity to the 38 grams of crack cocaine seized from the porch at the time a co-defendant was arrested. Contrary to appellant's assertion, the trial judge did not rely merely on the fact that the gun was found in a crackhouse in order to find that Foster possessed the weapon. Instead, after hearing the evidence at trial and at the sentencing hearing, the trial court first rejected Foster's claim that a co-defendant had been the actual owner of the gun, then noted that Foster was aware of, acquiesced in, and participated in the drug transactions in his home, and that the .38 was located among his goods, under his control and possession. Because review of the record as a whole does not leave us "with a definite and firm conviction" that the trial court's findings of fact and inferences from the facts were in error, *see Lam Kwong–Wah,* 966 F.2d at 689, we affirm the trial court's determination that possession of the revolver was relevant conduct attributable to appellant that justified the two-level sentence enhancement.

Moreover, we also note that appellant's violation of § 5861(i), which we have upheld, carries a base offense level of 18 under the federal sentencing guidelines. As such, even assuming that a sentence enhancement based on the .38 was improper, it appears Foster would have received the same sentence. Under the grouping provision of the guidelines, the two violations standing together support a combined offense level of 20.

As we perceive no error or prejudice in either appellant's conviction or sentence, the judgment of the District Court is

*Affirmed.*